

# THE ATTORNEY GENERAL
## OF TEXAS

**Gerald C. Mann**

AUSTIN 11, TEXAS

XXXXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

Hon. Lee Brady, Commissioner
Department of Banking
Austin, Texas

Opinion No. O-2319
Re: May examiners or offi-
cials of the Banking Depart-
ment discuss with the Insur-
ance Department's examiners
and examiners from the Attor-
ney General's Department and
the Secretary of State's Of-
fice matters contained in
the reports mentioned?

Dear Mr. Brady:

We beg to acknowledge receipt of your letter re-
questing a legal opinion from this department upon the above
captioned question, your letter being as follows:

"Simultaneous examinations have been made of
certain companies of this State by several of the
departments of the State government respectively
having supervision thereof. There is reason to
believe that these companies are affiliated either
through common stock ownership or otherwise, and
that there may be an exchange of assets or other
operations which make it difficult for one depart-
ment to intelligently examine the companies under
its supervision without information relative to
other companies which are not under its supervi-
sion. This department was one of the examining
departments.

"We should like your opinion as to whether
or not examiners or officials of this department
could discuss with the examiners or officials of
other examining departments matters contained in
the reports of the different departments.

"We will appreciate your giving this your con-
sideration and advising us of your opinion."

In the governmental scheme the State in the exer-
cise of the undeniable right of control or supervision of
its domestic corporations and other corporations doing busi-
ness in this State has conferred upon different officers of

the government the power of visitation and examination of such institutions or corporations.

Notable illustrations of this authorized right of visitation and examination are found in the following statutes:

Article 1366 declares:

"Every corporation, domestic or foreign, doing business in Texas, shall permit the Attorney General or any of his authorized assistants or representatives, to make examination of all the books, accounts, records, minutes, letters, memoranda, documents, checks, vouchers, telegrams, constitution and by-laws, and other records of said corporation as often as he may deem necessary."

Article 358 provides:

"The commissioner (Banking Commissioner) shall cause each banking corporation incorporated under the laws of this state, subject by law to examination, to be thoroughly and fully examined at least every six months and at such other times as the commissioner may deem necessary."

Article 881a-7 of the Building and Loan Association Act (Vernon's Civil Codification) provides:

"He (the Banking Commissioner) shall likewise appoint such building and loan examiners as in his judgment may be necessary to examine at proper and suitable intervals all building and loan associations under his supervision. . ."

Section 63 of the same Act further declares:

"Every foreign building and loan association doing business in this state shall be subject to the same examination as are building and loan associations organized under the laws of this state."

The Board of Insurance Commissioners or some individual commissioner of such board is authorized by several statutes to examine or cause to be examined the various types of insurance companies; notably, the following instances:

Revised Civil Statutes, Articles 4701, 4720, 4769, 4801, 4806, 4859f, 4860a, sub. 20, 4881, 4910, and 5030.

The Secretary of State in the administration of the Securities Act is authorized to make certain examinations, illustrations of which authority are found in Articles 600a and 6573a of Vernon's Revised Civil Statutes.

These citations are by no means all inclusive of the statutory authorization to examine, but they typify such legislative intention of corporate control.

The obvious purpose of these and other similar statutes is to afford to the State the opportunity to ascertain the necessary facts to aid in the effective administration of the laws controlling the institutions and corporations affected thereby. The information obtained by such visitations and examinations and from the required statements or reports is of course for the immediate aid to the particular officer or functionary exercising the right of visitation or examination but mediately for the benefit of the State, whose servants such officers and functionaries are. They are a part and parcel of the State's plan for executing the laws of the State. Each such visitation therefore is a part and parcel of the general governmental plan or scheme of the State itself. As evidence of which the following excerpt from the statutes will suffice.

Article 1369 of the statutes with respect to examinations made by or under the authority of the Attorney General - which is the broadest power conferred upon any State officer - declares:

"The Attorney General, or his authorized assistants or representatives shall not make public, or use said copies or any information derived in the course of said examination of said records or documents, except in the course of some judicial proceedings in which the State is a party, or in a suit by the State to cancel the permit or forfeit the charter of such corporation, or to collect penalties for a violation of the laws of this State, or for information of any officer of this State charged with the enforcement of its laws."

It is here made clear that while the information obtained by the Attorney General is for the immediate purposes of that officer, nevertheless, it is for the ultimate use of "any officer of this state charged with the enforcement of its laws."

Article 3352 of the Revised Civil Statutes, prescribing the oath to be taken by the examiner and the conditions of his bond, declares:

"Each examiner before entering upon the duties of his appointment, shall take and file in the office of the Secretary of State an oath to support the constitution of this State, to faithfully demean himself in office, to make fair and impartial examinations, and that he will not accept as present or emoluments any pay directly or indirectly for the discharge of any act in the line of his duty other than the remuneration fixed and accorded him by law, and that he will not reveal the condition of any bank or bank and trust company examined by him or any information secured in the course of any examination of any bank or bank and trust company to anyone except the commissioner."

Article 881a, Sub. 10a, with respect to the Banking Commissioner's examinations of building and loan associations, declares:

"Any regulatory or other public authority or officer of this state required, authorized, or permitted to examine any institution which is a member of a Federal Home Loan Bank or which is insured by Federal Savings and Loan Insurance Corporation, may in lieu of making any such examination, accept an examination of any such institution made by the Federal Home Loan Bank Board, a Federal Home Loan Bank, or Federal Savings and Loan Insurance Corporation, or may examine any such institution in conjunction with the Federal Home Loan Bank Board, a Federal Home Loan Bank, or Federal Savings and Loan Insurance Corporation. Any such regulatory or other public authority or officer may make available to the Federal Home Loan Bank Board, the Federal Home Loan Bank in which an association holds membership, and Federal Savings and Loan Insurance Corporation, any information furnished to or obtained by and all or any part of any report of any examination of any such institution made by any such regulatory or other public authority or officer."

These statutes are sufficient to indicate the public policy of the State with respect to such regulatory measures and to accentuate our statement above, that the

examinations authorized by law are not for the exclusive benefit of the particular officer making the examination, but in a larger sense, are for the benefit of the State and the public interest.

While it is true that reports and statements and information obtained by the State through authorized examinations are privileged under the law, such rule of privilege pertains only to the compulsory disclosure of such information by the person - the officer - possessing the same to a person or purpose other than that contemplated by the statutes under which the information has been obtained.

Even this privilege to the officer is not for the purpose of preventing any and all disclosures by him, but on the contrary, rests largely in the discretion of the officer himself having in mind the nature of the information and the purpose for which the disclosure is sought.

In our Opinion No. O-52, we stated:

"It is therefore the opinion of this department that:

"(1) The rule of privilege pertaining to examiners' reports obtains with respect to institutions (banks) that are closed and actively engaged in their corporate business at the time the report is called for or the privilege invoked.

"(2) The rule of privilege pertaining to examiners' reports applies to loan and brokerage companies the same as to banking institutions.

"(3) The Banking Commissioner has discretion in the manner of making public examiners' reports by giving copies thereof or permitting the inspection thereof, or in testifying or permitting examiners to testify under his supervision and express permission, limited only by his decision and discretion of whether or not the making public of such information is to the public interest."

In an exhaustive opinion by this department, written by C. M. Cureton, First Assistant Attorney General, late Chief Justice of our Supreme Court, addressed to the Commissioner of Banking and Insurance, the conclusion was announced:

"You have the authority in your discretion
to permit Mr. Goodnough (the examiner) to testi-
fy to any fact or facts obtained by him in the
course of his examination of this bank, when you
think that such disclosure would not be prejudi-
cial to public interest."

"The same rules would apply to the copies of
the examiners' report on file in your department,
or to any other information received by you in
your official capacity concerning the affairs of
this bank."

Upon these authorities and considerations, we are
of the opinion that where an officer such as mentioned by
you possesses any examination report or information as to
any institution or corporation in this State that would rea-
sonably be helpful to any other officer or department of the
Government in the exercise of a governmental power or func-
tion, it would be entirely within his power and authority to
cooperate with such officer or department of the State in
the manner indicated by your question. Such, we think, is
the established policy of the State.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Ocie Speer
Ocie Speer, Assistant

APPROVED MAY 14, 1940
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED: OPINION COMMITTEE
BY:        BWB, Chairman

OS:bt:wb